## THE STATE v. JOHN, A SLAVE.

1. When a slave has been convicted of a capital offence, it is not a sufficient reason to arrest the judgment, that the jury have omitted to assess his value, and to ascertain what portion of it shall be paid by the State to his owner, in pursuance of the provisions of the act of 1824. [Aikin's Digest, 124, s. 60, 64.]

Question reserved as novel and difficult, by the Circuit Court of Sumter County.

THE prisoner was indicted for the crime of murder, and convicted. The indictment charges, that he is a slave, the property of one Anderson, and it does not appear that, after returning the verdict of guilty, the jury were again sworn, then or at any other time, to assess the value of the slave.

This omission was urged as a reason why sentence should not be pronounced on the verdict, and the presiding judge, considering the question as novel and difficult, referred it to the Supreme Court.

SMITH, with whom was ERWIN, for the prisoner, insisted that the omission was a defect fatal to the prosecution, and for which the judgment ought to have been arrested. It is not sufficient that the prisoner has been found guilty; the statute prescribes other proceedings for the benefit and security of the owner, it is true, but public justice cannot be satisfied at the expense of a private wrong. [Aikin's Digest, 124, s. 60, 64.] The constitution declares, that private property shall not be

taken for, or applied to, public purposes, unless a just compensation shall be made therefor. [Art. 1, s. 13.] The principle which is now contended for, was recognized in The State v. Flora, 4 Porter, 111, when this Court held, that the omission to prove the ownership of the slave, as alledged in the indictment, was fatal to his conviction.

STEELE, with whom was the ATTORNEY GENERAL, contra.

GOLDTHWAITE, J.—If the statute referred to, imposes on this Court the duty of declaring a conviction void, when the proceedings are regular, and the verdict just, it presents, to say the least of it, a most singular anomaly in legislation.

The act, which it is supposed authorizes the arrest of judgment, is in these words : " Whenever, in the trial of any slave for a capital offence, the jury shall return a verdict of guilty, the presiding judge shall have the same jury sworn to assess the value of the said slave, and the verdict of the said jury shall be entered on the records of the Court; and the master or owner of the said slave, producing to the Comptroller of Public Accounts, a transcript from the records of the Court, regularly certified by the Clerk, and a certificate of the sheriff that any slave has been executed, in pursuance of the sentence of the Court, shall be entitled to receive a warrant on the Treasurer, for one half of the amount assessed by the jury, to be paid out of the fund hereinafter provided for that purpose." A tax is then permitted to be assessed on all slaves, to produce the necessary fund; and another section of the act provides, that " after the jury have found the value of the slave as aforesaid, they shall also say, what portion of the same the master shall have, which, in no case, shall exceed one-half of the value so found; and the prosecuting officer shall enquire into all the facts which go to shew the portion of blame attached to the master, that the jury may rightly assess the amount he shall have."

We may admit to the fullest extent, that, if the Legislature has prescribed a rule, Courts must enforce it, however repugnant the policy of the rule may be to their own views; but, in our opinion, the statute does not involve any of the consequences which are supposed by the counsel for the prisoner, to be attendant on it.

The Legislature has considered it expedient to provide, that slaves shall be partially paid for by the State, when executed for any crime, if the jury shall consider the master as entitled to any portion of the assessed value of the slave. Whether this act was induced by an impression, that the Constitution enjoined some similar provision as a duty, or from a desire to promote public justice, by making it compatible with private interest, is not important now to enquire. It is sufficiently certain, the act was made for the benefit of the owner, and affords no immunity whatever to the slave ; it does not assume to confer any privilege on the culprit.

The act is declaratory to the Court, to ascertain the value of the slave, by the same jury which has pronounced his guilt ; but this is merely the mode by which the value is to be made known to the accounting officers of the State. If any other mode had been enjoined, it would have the same connexion with the slave, as this. The reason why the jury was directed by the act to ascertain the value of the slave, probably was, because all the facts and circumstances would be in evidence before them, and therefore, they would be more impartial, or, at least, as much so, as any other umpire who might be selected.

The last clause, cited from the statute, seems to be conclusive to shew, that the view we take is the proper one. The jury is not bound to give the master any portion of the value when blame attaches to him; and we may not shut our eyes to the fact, that the master is charged as accessory to the fact, of the crime of which the slave is found guilty, though we have no wish to assume, that such is the fact ; but, if admitted to be so, what chance or what right would he have for compensation, by the verdict of a jury ?

If the Circuit Court, under this statute, is bound to be active instead of passive, and has neglected a duty which it should have performed, the master has doubtless some remedy for the value of his slave ; but an omission in this particular, cannot avail the convict; he must abide the penalty which the law awards to his crime, although his master may never be compensated.

The case of The State v. Flora, 4 Porter, 111, has been supposed, by the counsel for the prisoner, to sustain his position. It was there ruled to be necessary to prove the ownership of the slave, as alledged in the indictment, because the master was entitled to whatever compensation should be allowed under this act. Whatever apparent analogy there may be between that case and this, it extends no farther than to the *proof* requisite under the indictment. The proof before the jury must have been satisfactory on this, as on every other allegation, or the verdict should not have been as it is. We do not think we should be justified in extending the principle of the case cited, to any proceedings subsequent to the conviction ; for, as we have shewn, this statute was intended for the benefit of the master, and it rests with him to proceed in the investigation for the ascertainment of the value of the slave. If he omits it from motives of delicacy or otherwise, he is thrown on the justice of the Legislature for relief.

With respect to the argument raised on the thirteenth section of the bill of rights, we cannot arrive at the conclusion, that its framers ever thought, much less intended, to interpose a check on the legislative power to punish crimes against the peace of the community, or the lives of its citizens. If a slave cannot be lawfully executed, until he is paid for by the State, he certainly cannot be legally confined, until compensation is made to his owner, for the injury about to be done to his private right. It is impossible to say which of these positions is false, if either is true; and we dismiss the examination, perfectly satisfied that the constitutional inhibition, respecting the taking of private property for public uses, without making compensation, has no bearing on this conviction.

We think the Circuit Court properly determined the question referred to this Court, and that the judgment ought not to be arrested.